UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LISHAN WANG,                                    :
      Plaintiff,                            :
                           :
v.                                              :         3:24cv989 (MPS)
                           :
ANGEL QUIROS et al.,                            :
      Defendants.                           :

## INITIAL REVIEW ORDER

The *pro se* plaintiff, Lishan Wang, is a sentenced[1] inmate in the custody of the

Connecticut Department of Correction ("DOC") housed at MacDougall-Walker Correctional

Institution ("MacDougall"). On June 5, 2024, he filed his original civil rights complaint in this

action against Connecticut Attorney General William Tong; high ranking DOC officials

Commissioner Angel Quiros and District Administrator Rodriguez; ten DOC employees who

work at MacDougall;[2] and four DOC employees who work at Cheshire Correctional Institution

("Cheshire").[3] Compl., ECF No. 1.

On initial review, the Court permitted Plaintiff to proceed on the following individual

capacity claims: (1) Fourteenth Amendment equal protection violation against Correction Officer

---

[1] Publicly-available information on the DOC website confirms that Plaintiff was a sentenced inmate at the time relevant to this action.
http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=375805. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may "take judicial notice of relevant matters of public record.").

[2] Lieutenant Milner, Correction Officer Johnson, Warden Guadarrama, Deputy Warden Johnson, Counselor Supervisor Stanley, Counselor Supervisor Roy, Correction Officer Borkowski, Correction Officer Santaniello, Correction Officer Hall, and Correction Officer Robledo.

[3] Cheshire Correction Officer Rivera, Correction Officer Domijan, Warden Reis, and Deputy Warden Jordan.

Johnson, Correction Officer Hall, Counselor Supervisor Stanley, and Lieutenant Milner; (2) First

Amendment retaliation against Lieutenant Milner, Counselor Supervisor Stanley, and Officer

Johnson; (3) Deprivation of his right to court access against Correction Officer Robledo; and, (4)

Eighth Amendment violation against Lieutenant Milner. Under Federal Rules of Civil Procedure

20 and 21, the Court severed from this action Plaintiff's misjoined claims against the Officer

Rivera, Captain Domijan, Warden Reis, and Deputy Warden Jordan—all of whom allegedly

work at Cheshire Correctional Institution. IRO, ECF No. 19.

      The Court later granted Plaintiff's motion to amend his complaint. ECF No. 24. On

December 2, 2024, Plaintiff filed his Amended Complaint against Commissioner Quiros, and the

following DOC employees who work at MacDougall: Correction Officer Malik Johnson,

Lieutenant Bessye Milner, Counselor Supervisor Brian Stanley, Property Officer Edgar Robledo,

Correction Officer Hall, Warden Guadarrama, Captain Ortega, Counselor Lira, Correction

Officer Street, Counselor Benedict, and Health Service Administrative Remedy Coordinator

("HSAR") Jericka. Am. Compl., ECF No. 47. Plaintiff seeks both individual and official

capacity relief.

      The Prison Litigation Reform Act requires that federal courts review complaints brought

by prisoners seeking relief against a governmental entity or officer or employee of a

governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint,

or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief from a defendant who is immune from such

relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the Amended Complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. §1915A.

**FACTUAL ALLEGATIONS**

The Court summarizes Plaintiff's allegations in his Amended Complaint that are relevant to his claims against Defendants.[4]

Plaintiff was transferred to MacDougall on July 28, 2023. Am. Compl. at ¶ 52. At that time, Correction Officer Robledo deliberately kept Plaintiff's legal papers from him for about three weeks despite requesting his legal documents for his court hearing on August 14, 2023. *Id.* Plaintiff had to write to the DOC Commissioner, Warden and Deputy Warden for access to his papers, which was granted on August 20, 2023. *Id.*

In early October 2023, Plaintiff was moved from O-Block to H2-Block at MacDougall. Am. Compl. at ¶ 20. He claims that certain inmates came out of their cells during other tier inmates' recreation times, but he rarely came out of his cell without permission. *Id.* at ¶¶ 20-21.

On February 10, 2024, Plaintiff came out his cell during the evening medication pass to inmates and later realized he stayed outside of his cell for too long. *Id.* at ¶ 22. He was called to

---

[4] Rule 10(a) of the Federal Rules of Civil Procedure requires that all defendants be listed in the case caption. *See* Fed. R. Civ. P 10(a) ("title of the complaint must name all the parties"). In the body of his Amended Complaint, Plaintiff refers to conduct by individuals who are not named in the case caption. As these individuals are not included in the caption, they are not defendants in this case, and the Court does not consider whether Plaintiff has stated any plausible claims against them. *See Shariff v. United States*, 689 F. App'x 18, 19 (2d Cir. 2017) (noting that when dismissing original complaint, district court correctly instructed plaintiff that he must identify all defendants in the case caption); *Thompson v. Hartford Cty. Med. Dep't*, No. 3:19-CV-1983 (VAB), 2020 WL 2198096, at *3 (D. Conn. May 6, 2020).

the Bubble by Officer Johnson; Plaintiff did not go to the Bubble but went to his cell door, which was then opened by Officer Johnson. *Id.*

Fifteen minutes later, Officer Johnson issued him a disciplinary ticket. *Id.* at ¶ 23. Plaintiff later explained to Officer Johnson that he had stayed outside of his cell for too long because his cellmate was using the bathroom, and questioned why Officer Johnson did not issue a disciplinary ticket to other inmates who were doing the same thing. *Id.* Because Plaintiff believed the issuance of the disciplinary report was discriminatory, he did not sign it and filed a grievance to Commissioner Quiros, the Warden, and Deputy Warden. *Id.* at ¶ 26.

Plaintiff later advised two investigators about his belief that he was being given a disciplinary ticket for something that other inmates, especially African-American inmates, do on a daily basis. *Id.* at ¶ 27. Plaintiff sought to have the disciplinary ticket dismissed before he had to file an appeal by sending correspondence to Commissioner Quiros, the Warden, and Deputy Warden. *Id.* at ¶ 31.

Plaintiff attempted to reason with Counselor Supervisor Stanley about how it was unfair to single him out when he rarely ever left his cell and other inmates did so on a daily basis. *Id.* at ¶ 31. Counselor Supervisor Stanley came to his cell but refused to hear his explanation after he asked to use the quiet room to speak outside of the hearing of other inmates. *Id.*

When Plaintiff first met Counselor Stanley in 2023 after his transfer to MacDougall, Stanley asked him why he kept filing lawsuits against DOC employees and that he could not win. *Id.* at ¶ 39. Since then, Plaintiff has suffered from unfair treatment from Counselor Stanley, including Stanley's refusal to provide Plaintiff with blank paper for typing; his indignation about Plaintiff's complaints concerning threats from his cellmate; his refusal to hear Plaintiff's

complaint about Officer Johnson's unfair treatment that singled him out by issuing a disciplinary ticket; and his refusal to make a copy of Plaintiff's third witness statement because it was not on legal paper. *Id.* at ¶ 40.

On February 20, 2024, Plaintiff gave Counselor Lira his third witness statement to copy. *Id.* at ¶ 32. Plaintiff already had provided two witness statements for his hearing and was advised that he had missed his deadline to submit the third witness statement for the hearing on February 21, 2024, even though Plaintiff explained that Counselor Lira had failed to make a timely copy on February 20, 2024 or February 21, 2024 (when he did not come to work). *Id.* at ¶ 32. At the hearing, the hearing officer ruled against Plaintiff without review of the third witness statement that indicated other inmates stay in the dayroom outside of their recreation time. *Id.* at ¶¶ 34-35.

Plaintiff claims that he is routinely treated differently from other inmates by the correctional staff. In December 2023 or January 2024, Officer Hall banned Plaintiff from coming out his cell to get apple juice after Plaintiff brough his tray inside, although he permitted two black inmates to stay outside of the dayroom for ten or twenty minutes. *Id.* at ¶ 25. He claims several inmates stay in the day room for extra time but have not been issued disciplinary tickets. *Id.* Plaintiff claims that Officer Hall's behavior changed after he filed a complaint about Officer Hall to Commissioner Quiros, Warden Dougherty, and Deputy Warden Johnson. *Id.*

On April 13, 2024, Lieutenant Milner slammed Plaintiff's cell door so violently that he urinated on himself. *Id.* at ¶ 38. After Plaintiff inquired who shut the door and whether he could take "piss," Lieutenant Milner yelled, "This block all fucked because of you." *Id.* at ¶ 38. Plaintiff asserts that he believed that Milner sought to provoke him or to instigate the anger of other inmates anger against Plaintiff. *Id.* He perceived that Lieutenant Milner implied that

Plaintiff's complaints and grievances to the Commissioner and Wardens had resulted in his housing block being subjected to more shakedowns on drugs and alcohol and screaming at inmates to stay into their cells during their recreational periods. *Id.*

Plaintiff later returned to his cell and found Lieutenant Milner "tossing" his belongings as she was "shaking down his cell." *Id.* He saw another correctional officer with a bag that Plaintiff believed contained his legal documents. *Id.*

When Plaintiff attempted to go outside to the yard, Lieutenant Milner stopped him and threatened him with segregation if he went out the door. *Id.* Plaintiff retreated to his cell only to find his bedsheet ripped off, clothing scattered on the floor, while legal papers, letters and complaints were spread out on the bunk bed. *Id.*

Plaintiff claims he suffered from "uria" and incontinence for weeks and that he has lived in fear due to Lieutenant Milner's comments, which he believes were intended to instigate other inmates against him. *Id.* at ¶ 39. He alleges Lieutenant Milner's conduct has suffered from "Bifucking Syndrome or Disorder," a name he has created for his fear, anxiety, fatigue, and depression. *Id.*

In September 2024, Ortega took away the typewriter in his cell, although he had previously permitted other inmates to use the typewriters in their cells. *Id.* at ¶ 43 (citing ex. 2); ¶ 67.

Since October 24, 2024, Plaintiff has been relocated to several different housing blocks, which has had significant adverse effects on his litigation. *Id*. at ¶ 42. Plaintiff asserts that these moves indicate retaliation. *Id.*

After he filed complaints about Lieutenant Milner, Counselor Lira, and Captain Ortega in October 2024, Counselor Lira advised Plaintiff that he was the one who made "legal copy" for him and questioned why Plaintiff had filed a complaint against him. *Id.* at ¶ 43. Lira told Plaintiff he would limit his number of copies and that Plaintiff should make his copies at the library. *Id.* Plaintiff complains that Counselor Lira also refused to provide social and legal envelopes and that he made copies with the contents cut off at the bottom. *Id.* Plaintiff requested Lira to remake the copies due to his mistake and advised that he had wasted paper. *Id.*

One week later, Plaintiff made a verbal complaint to Deputy Warden Magnifico about the administrative remedies box lacking a lock and sign for one month, which Plaintiff surmises may have been the result of Counselor Lira's duties. *Id.* at ¶ 44. Plaintiff claims that Lira heard him describe his complaint about the box and later refused his request to make copies. *Id.*

Plaintiff was transferred to the L-1 Block, a worker block, the next day. *Id.* at ¶¶ 44-45. Plaintiff spoke to the block counselor, Defendant Benedict (who used to serve as a grievance officer), about a legal telephone call; Benedict advised Plaintiff that he had written too many complaints and refused to address his needs for a razor card and social and legal envelopes. *Id.* at ¶ 45.

The next day, on October 24, 2024, Plaintiff was transferred to the N-Block, which he claims is similar to a disciplinary housing unit. *Id.* Plaintiff claims that this is equivalent to punishing him, although he did not have a disciplinary ticket. *Id.* Plaintiff claims that Captain Ortega, Counselor Lira and Counselor Benedict moved other inmates who were known drug users from the H2-Block to the L-1 Block on October 24 or 25, but only Plaintiff was moved to

N-Block. *Id.* Plaintiff alleges that it "seemed" that Captain Ortega, Counselor Lira and Counselor Benedict were rebuilding a network for drug trafficking in the two blocks. *Id.*

While Plaintiff was housed at N-Block, the system at MacDougall showed that he was housed at O-Block. *Id.* at ¶ 45. Plaintiff claims that this misinformation caused him to miss legal and social telephone calls and mail while housed in the N-Block. *Id.* at ¶ 45. In addition, H2-Block Counselor Lira did not forward his legal telephone calls. *Id.* at ¶ 46. Moreover, the N-Block did not contain a typewriter. *Id.* at ¶ 46.

While housed at N-Pod, Officer Street turned on the dim light inside of Plaintiff's cell. *Id.* at ¶ 49. But the dim light was not functioning normally as it was flashing and blinking. *Id.* This caused Plaintiff to suffer dizziness and heart palpitations for hours. *Id.* The next evening, Plaintiff complained to Officer Street, who appeared to enjoy Plaintiff's suffering. *Id.* Officer Street accused Plaintiff of lying about how many people were in his cell while Officer Street was conducting the count. *Id.* Plaintiff had complained about Officer Street before and claims that he was retaliating against Plaintiff. *Id.* In his statement of his claims, Plaintiff asserts Officer Street denied him use of a typewriter in his cell, although other inmates were permitted to use a typewriter in their cell and that he acted to enrage other inmates against him.

On November 4, 2024, Plaintiff was moved to the O-Block. *Id.* at ¶ 45. Both the N- and O-pods are for inmates who are receiving disciplinary tickets or who are being transferred to other facilities. *Id.* at ¶ 50. Plaintiff had asked the Warden to permit him to have single cell for one month while he finished his legal work for an appeal and amended complaint. *Id.*

On November 6, 2024, Plaintiff was placed in an O-Pod cell with a known smoker, who had been caught smoking and drinking. *Id.* On November 8, 2024, Plaintiff complained about his

health concerns about secondhand smoke from his cellmate, who had medical use of marijuana and smoked two hours a day. *Id.* Plaintiff asserts that his cell placement constituted a form of retaliation and endangers his physical and mental health. *Id.*

Plaintiff alleges that Defendant HSAR Coordinator Jericka prevented him from accessing his DOC administrative remedies by removing the sign and lock on the HSAR box, and that she rejected his Health Services Administrative Remedies ("HSAR") in violation of his First Amendment rights. *id.* at ¶¶ 53, 57, 60. In October 2024, Plaintiff filed a Level 1 HSAR about his inadequate medical treatment at the MacDougall medical unit. *Id.* at ¶ 53. Defendant Jericka never sent a receipt to Plaintiff for his administrative remedy filings. *Id.*

On November 5, 2024, she advised Plaintiff that his Level 1 HSAR had been received and that the appropriate procedure would commence in accordance with Directive 8.9. *Id.* at ¶ 54. In a response dated November 24, 2024, Plaintiff was advised by the Regional Chief Operation Officer that his informal grievance had been received and he could file an HSAR. Plaintiff later received notice from Jericka that his Level 1and Level 2 HSARs were rejected. *Id.* Plaintiff claims that the "paper trails" show Jericka lied about when his HSARs had been rejected and did not properly justify the rejections. *Id.*

Plaintiff asserts that Warden Guadarrama and Commissioner Quiros are involved in the alleged constitutional violation of his rights. *Id.* at ¶ 55. He notes that they are responsible for violating prison policy barring placement of Level 3 and 4 inmates in the same blocks. *Id.* He claims that drug dealers are often Level 3 inmates, and that drug dealers prefer to be in a Level 4 facility, such as MacDougall, where they have only two inmates in a cell with a solid door so that they can use drugs without being seen. *Id.* at ¶¶ 55-56. Plaintiff claims that Warden Guadarrama

9

and Commissioner Quiros are directly responsible for drug trafficking within the Connecticut

DOC facilities due to their failures to enforce DOC policy. *Id.* at ¶ 55. He claims further that they

are responsible for harm caused to Plaintiff by the drug dealer and failure to prevent the

retaliation and abuse directed toward Plaintiff. *Id.* He maintains that Warden Guadarrama and

Commissioner Quiros cannot claim that they are not personally involved in the conduct by

Defendants Johnson, Hall, Ortega, Milner, Lira and Benedict to cater to drug users and dealers,

or to violate Plaintiff's constitutional rights while they build a drug trafficking network. *Id.* at ¶

56. In addition, he asserts that the Commissioner and Warden cannot claim their lack of personal

involvement in the campaign of harassment against Plaintiff especially as he has repeatedly

informed them about it. *Id.* at ¶¶ 57-58.

**DISCUSSION**

Plaintiff claims violation of his First, Eighth and Fourteenth Amendment rights.

Generally, Plaintiff reasserts the same allegations against Correction Officer Johnson, Correction

Officer Hall, Counselor Supervisor Stanley and Lieutenant Milner, and Property Officer Robledo

arising after his transfer to MacDougall in 2023 through April 2024. His Amended Complaint

adds a claim against Counselor Lira arising from his disciplinary report issued by Johnson in

February 2024, but primarily adds new claims arising from alleged mistreatment in September

through November 2024, after the Court issued the initial review order on his original complaint

in August 2024.

The Court does not revisit the claims the prior initial review determined as sufficient, and

such claims may continue to proceed in this action under the Amended Complaint. In this Order,

the Court considers (1) whether Plaintiff has stated any new plausible claims against Milner and

Robledo under newly asserted theories of liability or alleged facts; (2) whether Plaintiff has alleged any plausible claims against Warden Guadarrama and Commissioner Quiros; and (2) whether Plaintiff has alleged any plausible claims against the newly added Defendants. The Court incorporates herein the relevant legal standards under the First Amendment, Fourteenth and Eighth Amendment claims set forth in the Court's prior initial review order.

### A.    Allegations Arising from Conduct Alleged in Original Complaint (between July 2023 to April 2024)

1. <u>Lieutenant Milner</u>

Plaintiff alleges that he was mistreated by Lieutenant Milner in April 2024 while he was housed in the H2-Pod at MacDougall. In his Amended Complaint, Plaintiff asserts that Lieutenant Milner retaliated against him in April 2024 him for filing complaints against Johnson and DOC. Am. Compl. at ¶ 63. Plaintiff's Amended Complaint alleges that she made statements on April 13, 2024, implying that she was angered by his prior complaints to the warden and commissioner about the housing unit. *Id.* at ¶ 38. The Court concludes that Plaintiff's allegations that Lieutenant Milner acted with a retaliatory intent on April 13, 2024 due to his prior protected First Amendment filings could benefit from further development of the record and the adversarial process. Thus, Plaintiff may proceed on his First Amendment retaliation individual capacity claim against Lieutenant Milner for her conduct on April 13, 2024.

Plaintiff also asserts that Lieutenant Milner violated his Eighth Amendment rights when she illegally restrained him and recklessly endangered his safety in April 2024. *Id*. at ¶ 63. Plaintiff alleges that his cell door locked after Lieutenant Milner slammed his cell door closed and he had to request a correctional officer to open it for him. Am. Compl. at ¶ 38. He asserts that at some unspecified time, she "illegally restrained" him "by giving him a ticket if he

disobeyed the orders and then sanctioned him with more jail time." *Id.* at ¶ 47. He alleges

Lieutenant Milner made false statements in front of other inmates about Plaintiff's complaints

about his housing unit that has caused him to suffer "from dysuria and incontinence," and

"'Bifucking Syndrome or Disorder'(a name he creates)-Fear(with anxiety, PTSD, etc.) and

Fatigue(with depression, occasional suicidal ideation, etc.)." *Id.* at ¶ 39.

Plaintiff's allegations do not state a plausible claim that Lieutenant Milner subjected him

to any illegal use of restraint or abuse that could constitute excessive force in violation of the

Eighth Amendment.[5]  For a claim of Eighth Amendment excessive force, Plaintiff must satisfy

both an objective and subjective element. To meet the objective component, the inmate must

allege that the defendant's conduct was serious enough to have violated "contemporary standards

of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)(internal quotation marks and citation

omitted). The subjective component requires the inmate to show that the prison officials acted

wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley

v. Albers*, 475 U.S. 312, 320-321 (1986)).

To the extent Plaintiff claims that Lieutenant Milner's subjected him to excessive force

when she slammed the cell door (which then locked him in his cell), the Court cannot conclude

based on the alleged facts that such conduct was serious enough to violate contemporary standards

---

[55]  To the extent he claims he is subject to unreasonable seizure, Plaintiff has not alleged facts to describe a seizure in violation of the Fourth Amendment. *See Petion v. Chevalier*, No. 3:22-CV-1646 (OAW), 2023 WL 8358065, at *2 (D. Conn. Dec. 1, 2023) (analyzing claim concerning use of restraints in prison under Eighth Amendment and citing *Brown v. Graham*, 470 F. App'x 11, 14 (2d Cir. 2012) (questioning whether a prisoner has a Fourth Amendment right against seizure)).

of decency, especially in light of the fact that Plaintiff was able to call for the cell door to be unlocked.[6] Nor does Plaintiff allege sufficient facts to assess whether Lieutenant Milner unconstitutionally "restrained" or acted without penological justification when she threatened him with a disciplinary ticket if he did not obey order or that she acted improperly when she later sanctioned him. It is unclear what circumstances Plaintiff refers to when he claims that she sanctioned him with more "jail time." "Although we afford a *pro se* litigant a certain degree of latitude in the sufficiency of his factual allegations, a liberal interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled." *Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) (citation and quotation marks omitted).

Plaintiff's Eighth Amendment claim against Lieutenant Milner for deliberate indifference to his health and safety is dismissed.

2.  Officer Robledo

The Court previously permitted Plaintiff to proceed against Officer Robledo on an access to Court deprivation because his complaint indicated that Robledo "deliberately kept" his legal papers from him for approximately three weeks after he was transferred to MacDougall in July 2023, which may have compromised his litigation. *See* IRO at 16-17.

In his Amended Complaint, Plaintiff essentially alleges the same facts but asserts that Robledo's conduct constituted retaliation. For purposes of initial review, Plaintiff's allegations that Officer Robledo refused to provide him the legal papers despite his awareness of Plaintiff's

---

[6] Alternatively, Lieutenant Milner is entitled to qualified immunity for slamming the cell door because no reasonable officer would be on notice that such conduct which was not likely to inflict physical harm under ordinary circumstances. *See Mustafa v. Pelletier*, No. 22-2187, 2023 WL 7537625, at *2 (2d Cir. Nov. 14, 2023) (concluding officer who spilled a cup of juice on an inmate was entitled to qualified immunity from liability for Eighth Amendment excessive force.).

imminent legal hearing are sufficient to suggest a plausible First Amendment retaliation claim. Thus, Plaintiff may now proceed against Officer Robledo on his First Amendment individual capacity claims based on retaliation and access to the courts deprivation.

### 3. Counselor Lira

Plaintiff complains that Counselor Lira failed to copy his third witness statement in time for it to be provided for his hearing. Am. Compl. at ¶ 32. He explains that he made the request to Lira for the copy on February 20, 2024 (Tuesday) and was advised that the hearing would take place on Wednesday, February 21, 2024, rather than the original scheduled date of February 22, 2024. *Id.* Counselor Lira did not make the copy on February 20, 2024 and did not report to work on February 21, 2024. *Id.*

These facts do not raise an inference that Counselor Lira violated Plaintiff's First Amendment or Fourteenth Amendment equal protection rights. No facts suggest that Lira failed to copy his witness statement to retaliate against him for prior First Amendment protected conduct or that Lira acted with any discriminatory animus to treat him differently than other inmates. Accordingly, the Court discerns no plausible section 1983 claim of constitutional violation arising from the failure of Lira to make copy of the witness statement for his hearing.

### 4. Commissioner Quiros and Warden Guadarrama

On prior initial review, the Court dismissed Plaintiff's claims against high ranking officials, including Defendants Quiros and Guadarrama. IRO at 20-21.

Plaintiff's Amended Complaint appears to assert that Quiros and Guadarrama are liable for the First, Fourteenth or Eighth Amendment violations arising from conduct by Correction Officer Johnson, Correction Officer Hall, Counselor Supervisor Stanley and Lieutenant Milner,

14

and Property Officer Robledo from July 2023 through April 2024. Plaintiff alleges that Quiros and Guadarrama are involved because he informed them of such alleged violations. Am. Compl. at ¶ 25.

A plaintiff "must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability."). Further, "[a] supervisor's 'mere knowledge ...' is not sufficient because that knowledge does not amount[ ] to the supervisor's violating the Constitution." *Id.* at 616–17 (citation omitted)*; see also Lopez v. Chappius*, No. 6:17-CV-96395 EAW, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) (receipt of communication insufficient to show personal involvement; "Even before *Tangreti*, it was well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find the defendant was personally involved in the deprivation alleged.") (quotations omitted).

In addition, Plaintiff alleges that Warden Guadarrama and Commissioner Quiros are directly responsible for problems caused by drug abuse and are "involved personally" in harm to Plaintiff caused by the drug abuse "endemic" and correctional officer failure to enforce DOC policy and to permit abuse and retaliation against Plaintiff. Am. Compl. at ¶¶ 55-56. These allegations boil down to a claim that Defendants Quiros and Guadarrama failed in their duty to provide adequate staff supervision. But after *Tangreti*, a failure by Warden Guadarrama or Commissioner Quiros to provide adequate supervision of correctional staff is not sufficient to state a plausible claim for liability under section 1983.

15

To the extent Plaintiff claims that Guadarrama and Quiros should be liable for Eighth Amendment violation for harm to Plaintiff caused by his exposure to drug abusers in his unit, Plaintiff has still not alleged facts to support a claim of their personal involvement. He has not alleged facts sufficient to suggest that either Guadarrama and/or Quiros was aware that their conduct regarding the drug endemic "would cause a substantial risk of harm [to Plaintiff] and then disregarded that risk." *Crispin v. Peiri*, No. 3:21-cv-475 (KAD), 2023 WL 2931846, at *8 (D. Conn. Apr. 13, 2023).

Accordingly, Plaintiff has not alleged any plausible claims that Quiros or Guadarrama had any direct personal involvement in violation of his constitutional rights from July 2023 through April 2024.[7]

### B.    Claims arising After Issuance of IRO in August 2024

### 1. Conspiracy

Plaintiff's Amended Complaint alleges that he has been subjected to a "campaign of harassment" after he filed this civil rights action and that the "retaliations" are "collective." Am. Compl. at ¶¶ 61, 63, 67, 68, 69, 71, & p. 30-33. He claims that both Warden Guadarrama and Commissioner Quiros stood by indifferently while other defendants were "launching" the "campaign [of] harassment" against Plaintiff occurring from October 2024 through November 2024. *See id*. at 30. The Court construes Plaintiff's claim of concerted acts by different

---

[7] Plaintiff alleges that he made a request to Warden Guadarrama a single cell so that he could better prepare for his litigation, and that he made requests to the Commissioner and MacDougall Warden to protect him from his cellmate's smoking and to stop retaliating against him but had not yet received a response. *Id*. As these allegations do not suggest that Defendants Quiros or Guadarrama received, considered or even acted on these request, the Court cannot determine that such allegations support their involvement in any constitutional violation. *See Darby*, 14 F.4th at 130 n. 6.

Defendants as a claim of conspiracy.

"To prove a conspiracy to violate civil rights under 42 U.S.C. § 1983, a plaintiff must show: '(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Pal v. Canepari*, No. 3:20-cv-13 (MPS), 2023 WL 2712371, at *22 (D. Conn. Mar. 30, 2023) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). Plaintiff must allege facts showing " 'that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Forte v. City of New York*, No. 16-CV-560 (VSB), 2023 WL 6259652, at *10 (S.D.N.Y. Sept. 26, 2023) (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)). A claim of conspiracy cannot be grounded on conclusory or vague allegations. *Id.* Plaintiff must also identify the constitutional right violated. *See id.* (observing "where a plaintiff fails to plead a constitutional violation, a conspiracy claim based on the unsubstantiated constitutional violation must fail as well." (citing cases)).

To the extent he claims any Defendants acted in conspiracy to violate his civil rights by harassing him and retaliating against him, Plaintiff fails to allege that there was any plausible agreement between prison officials to act together to violate his constitutional rights. As a result, his claim of conspiracy is wholly grounded on conclusory or vague allegations. Accordingly, this claim will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

### 2. Misjoinder and Severance

Federal Rule of Civil Procedure 20(a)(2) permits joinder of multiple defendants in one action if: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and

occurrences"; and (2) "any question of law or fact common to all defendants will arise in the action." The Court may "drop a party" or "sever any claim against a party" that it finds to be improperly joined. Fed. R. Civ. P. 21.

Under the first requirement of Rule 20(a), the determination of whether something involves the same "transaction" or "occurrence" is conducted on a case-by-case basis. *Dixon v. Scott Fetzer Co.*, 317 F.R.D. 329, 331 (D. Conn. 2016) ("What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." (quoting *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008))). Whether claims arise out of the same transaction depends on the logical relationship between the claims and whether the "essential facts" of the claims "are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978). The same transaction requirement "means that there must be some allegation that the joined defendants conspired or acted jointly." *Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008) (internal quotation marks omitted). The second requirement—that a question of law or fact common to all defendants will arise in the action—is met where "the court finds that there is 'substantial' overlap in questions of law or fact across the claims." *Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019). A plaintiff's allegation of injury "by all defendants is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)." *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009).

In determining whether to sever a claim under Rule 21, the court considers "the two requirements of Rule 20 and additional factors, including (1) whether severance will serve

judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (relying on *Laureano v. Goord*, No. 06-CV-7845, 2007 WL 2826649, at *8 (S.D.N.Y. Aug. 31, 2007)). More generally, courts "look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Kalie v. Bank of Am. Corp.*, No. 12-CV-9192 (PAE), 2013 WL 4044951, at *3 (S.D.N.Y. Aug. 9, 2013) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).

Here, Plaintiff's Amended Complaint alleges distinct acts of retaliation and/or mistreatment by new Defendants Street, Lira, Benedict, Jericka, and Ortega in September through November 2024.[8] These claims do not arise from the same transactions and occurrences as the alleged conduct underlying Plaintiff's constitutional claims proceeding in this case against Johnson, Stanley, Milner and Robledo arising from July 2023 through February 2024. *Sowell v. Annucci*, No. 22-CV-6538 (LTS), 2023 WL 4133958, at *5 (S.D.N.Y. June 22, 2023)

---

[8] Plaintiff also asserts a claim against Lieutenant Milner for her role in "launching [the] 'campaign of harassment' since 10/24/2024." Am. Compl. at ¶ 63. But Plaintiff's allegations do not allege any facts to support a claim of harassment of constitutional dimension. He alleges that he filed a complaint against her in early October 2024 (¶ 43), that "maybe" she was involved with Ortega, Lira and Benedict to rebuild "a network for drug trafficking" (¶ 45), and a conclusory assertion that "all his hardship, mishaps, and losses in legal work have been caused by retaliations" from Lieutenant Milner and Ortega, Lira and Benedict (¶ 47). It is well established that a plaintiff's allegations must be sufficient to support a claim for relief "'above the speculative level'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007)). Accordingly, Plaintiff has not plausibly alleged facts to support a constitutional claim against Lieutenant Milner for her conduct during the "campaign of harassment" from October through November 2024.

("Plaintiff's allegations that multiple defendants harmed him in separate incidents are insufficient to join all of his claims in a single action.").

Under Federal Rule 21, the Court will sever Plaintiff's claims arising from the alleged acts of retaliation and/or mistreatment by Street, Lira, Benedict, Jericka, and Ortega arising after August 2024 through November 2024. Essentially, Plaintiff seeks to include several different lawsuits in this single action based on distinct factual predicates concerning violation of his constitutional rights. It would not serve the interests of justice to proceed in this action on his original claims that allegedly occurred after his transfer to MacDougall in July 2023 through February 2024, and the claims of alleged mistreatment occurring after August 2024 through November 2024. *See Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 264 (D. Conn. 2012) (severance may be appropriate where claims "arise from different circumstances and would require separate analyses"). Retaining all of Plaintiff's claims in a single action will hinder settlement negotiations and trial by retaining so many distinct claims by different defendants in one action.

Accordingly, Plaintiff's claims against Defendants Street, Lira, Benedict, Jericka, and Ortega are improperly joined and subject to dismissal without prejudice under Federal Rule of Civil Procedure 20 and 21.

### 7.    Official Capacity Claims

Plaintiff requests injunctive and declaratory relief. Specifically, he seeks a declaration that Defendants have violated his rights under federal law. Compl. at ¶ 74. He requests the Court to issue injunctive orders to stop the "campaign of harassment" and retaliation; to keep him safe and free from "toxic effects of illicit drugs"; to prevent his exposure to inmates known to have a history

of violence towards him; to protect his First and Eighth Amendment rights; to require responses to his complaints with written answers in a timely manner; and "to stop all kinds of abuses, discrimination, and retaliation" against him at DOC. *Id.* at ¶ 75. He also seeks an order to be provided with a single cell for six months so that he can prepare for an appeal and other legal cases; and he seeks an order to be placed in a housing block where Ortega is not a Captain or Unit Manager. *Id.*

A plaintiff may proceed against a state official in his or her official capacity to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). Thus, Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a).

However, the exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993). Accordingly, Plaintiff's request for a declaratory judgment that Defendants' past conduct violated his rights is not a plausible request for official capacity relief.

"In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–

47 (1994)). Thus, remedial orders "that unnecessarily reach out to improve prison conditions other than those that violate the Constitution" must be rejected. *Brown v. Plata*, 563 U.S. 493, 531 (2011). In addition, a request for injunctive relief "must be more specific than a simple command that the defendant obey the law." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011*); see Craig v. Connecticut Dep't of Mental Health & Addiction Servs.*, No. 16-CV-2100 (JCH), 2017 WL 5892193, at *5 (D. Conn. Nov. 28, 2017) (rejecting plaintiff's request for an injunction requesting "that each defendant shall fully comply with the provisions of ... 42 U.S.C. § 1981").

Plaintiff's official capacity requests seeking court orders requiring Defendants to comply with constitutional standards do not constitute plausible requests for official capacity relief. In addition, Plaintiff's requests for single cell status so that he can work on his legal actions or his request to be placed in a certain housing block do not seek relief for any ongoing constitutional violation within the scope of any constitutional claims proceeding in this action. Accordingly, the Amended Complaint's requests for official capacity relief are dismissed as not plausible.

To the extent he asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

**ORDERS**

The Court enters the following orders. These orders are without prejudice to the Defendants' rights to seek dismissal of any claims under Rule 12(b)(6).

1.  The case shall proceed on the individual capacity claims for (1) Fourteenth Amendment equal protection violation against Correction Officer Johnson, Correction Officer

Hall, Counselor Supervisor Stanley, and Lieutenant Milner; (2) First Amendment retaliation against Lieutenant Milner, Counselor Supervisor Stanley, Officer Johnson and Officer Robledo; and (3) Deprivation of his right to court access against Correction Officer Robledo.

Plaintiff's claims against new Defendants Street, Lira, Benedict, Jericka, and Ortega are **SEVERED** as misjoined under Federal Rules of Civil Procedure 20 and 21. These claims are **DISMISSED** without prejudice.

All other claims, including official capacity claims, are DISMISSED with prejudice. Defendants Commissioner Quiros and Warden Guadarrama are DISMISSED from this action.

Defendants Milner, Stanley and Robledo have returned executed waivers. ECF Nos. 25, 26, 27. The Court sent a request for waiver to Johnson on January 22, 2024, see ECF Nos. 57, and it issued an Order for Plaintiff to identify the correct Defendant Hall. ECF No. 58.

The Court will not permit further amendments to the complaint without a showing of good cause, inasmuch as the Court is including a revised scheduling order in this ruling. *See* Fed. R. Civ. P. 16.

Plaintiff is advised that he must identify the correct Officer Hall who is a Defendant in this case by **June 20, 2025**. Failure to do so will result in the dismissal of his claims against Officer Hall.

2.    Defendants must file a response to the Amended Complaint on or before **June 28, 2025**. All discovery must be completed by **August 28, 2025**, and all motions for summary judgment must be filed **by September 30, 2025**.

3.    The clerk shall send a courtesy copy of the Amended Complaint and this Order to the DOC Office of Legal Affairs.

23

4.  According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

5.  If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(d) provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

6.  Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 18th day of April 2025, at Hartford, Connecticut.

24